UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSE JEROME SMITH,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 3:21-CR-128-TAV-JEM-1 |

**MEMORANDUM OPINION AND ORDER**

This criminal case is before the Court on defendant's pro se motion for a sentence reduction under both 18 U.S.C. § 3582(c)(1)(A) and 18 U.S.C. § 3582(c)(2) [Doc. 139]. The Court appointed attorney Mark Brown to represent defendant, under Standing Orders 21-09 and 24-05 [Doc. 143], and Attorney Brown has filed a notice of no intent to supplement defendant's pro se motion [Doc. 145]. The government responded in opposition [Doc. 148]. For the following reasons, defendant's motion for a sentence reduction [Doc. 139] will be **DENIED**.

## I. Factual Background

On October 12, 2022, defendant pled guilty to conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) (Count 1), possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) (Count 2), and discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 4) [Docs. 66, 67].

In calculating defendant's guideline range, the presentence investigation report ("PSR") calculated a total of seven criminal history points based on defendant's prior convictions and then added two "status points" because defendant committed the instant offenses while under a criminal justice sentence in the Superior Court of Fulton County [PSR ¶¶ 55–56]. Based on a total criminal history score of nine, a criminal history category of IV resulted [*Id.* ¶ 57]. However, because defendant was deemed a career offender under § 4B1.1(b) of the Guidelines, his criminal history category was set at VI [*Id.* ¶ 58]. Based on a total offense level of 34 and a criminal history category of VI, defendant's guideline range was calculated as 262 to 327 months [*Id.* ¶ 81]. However, because Count 4 required a mandatory minimum term of 120 months' imprisonment, to run consecutive to any other sentence imposed, defendant's effective guideline range was 382 to 447 months [*Id.*].

On June 6, 2023, the Court ultimately sentenced defendant to a total of 360 months imprisonment, [Doc. 111]. According to the Bureau of Prisons' website, defendant is presently scheduled for release on August 4, 2046. Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed Oct. 26, 2026).

## II. Compassionate Release

### A. Standard of Review

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised

one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Defendant seeks relief, at least in part, under § 3582(c)(1)(A)(i) [Doc. 139].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement

> on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

**B. Analysis**

**i. Exhaustion**

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

Here, the government concedes that the exhaustion requirement has been met [Doc. 148, p. 2]. Accordingly, the Court will address the merits of defendant's request under § 3582(c)(1)(A).

### ii. Section 3553(a) Factors

Ultimately, the § 3553(a) factors weigh against granting compassionate release, and therefore, the Court declines to address whether defendant has established extraordinary and compelling grounds for release. *See Elias*, 984 F.3d at 519.

Section "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). 18 U.S.C. § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *Id.*

In finding that the § 3553(a) factors, and particularly, the nature and circumstances of this offense and the history and characteristics of the defendant, weigh against granting compassionate release, the Court begins with the criminal conduct in this case. The presentence investigation report ("PSR") states:

> On January 26, 2020, co-defendants Kenneth Edmonds and Charles Keeling arranged to meet the defendant at the defendant's apartment in Knoxville,

> Tennessee to purchase $10,000.00 worth of heroin from the defendant. Edmonds called the defendant earlier in the day and the three arranged to meet at the defendant's apartment to complete a purchase of heroin. Edmonds and Keeling, along with a female companion, Karen Kanott, drove to the defendant's apartment . . . in Knoxville. Edmonds and Keeling went up some out-door stairs and then entered the defendant's apartment.
>
> While inside the defendant's apartment, the three began negotiating the heroin transaction. The defendant got into a disagreement and argument with Edmonds and Keeling, which escalated into a physical altercation. Edmonds and Keeling struck the defendant several times and took a bag of narcotics. The defendant then retrieved his handgun and began firing at Edmonds and Keeling as the two fled the apartment. Edmonds and Keeling raced down the stairs and sped away in their car. Smith pursued the two and continued to fire rounds at them and their vehicle. One of the rounds the defendant fired broke a window at a neighboring apartment complex and another round fired struck a person at a neighboring apartment complex on the thigh. The defendant ran to his own car and pursued Edmonds, Kanott, and Keeling. The defendant eventually fled the area, abandoned his car at a laundry-mat, and left Knoxville, Tennessee, for Atlanta, Georgia.
>
> Edmonds and Keeling's car became disabled on Middlebrook Pike due to being struck by several bullets and Knoxville Police Officers responded to the scene. Knoxville Police Officers recovered over $10,000 in U.S. Currency from the car. After being advised of their Miranda rights, Edmonds and Keeling admitted to meeting the defendant for the purpose of purchasing $10,000 worth of heroin.
>
> A search at the defendant's apartment was executed by law enforcement. Law enforcement officers seized 31 grams of cocaine, 267 grams of heroin, 1.2 kilograms of ice methamphetamine, a loaded Hi-Point Model 995 9mm carbine rifle, $6,874 in U.S. Currency, multiple plastic baggies, multiple digital scales, and cutting agents. The defendant's abandoned car was located by Knoxville Police Officers and subsequently searched. Officers observed fresh blood splatters within the car. Officers also found a Springfield XD9 9mm handgun with an extended magazine and fresh blood on the trigger. The Tennessee Bureau of Investigation conducted a DNA comparison of the blood found within the car and on the trigger of the Springfield handgun and determined the DNA matched the defendant.

[PSR ¶¶ 18–21].

The Court has considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). Further, the Court has considered the kinds of sentences available, the guideline sentencing range, and the need to avoid unwarranted disparities. *Id*.

The seriousness of the offense is particularly notable in this case, where defendant's offense involved repeated firing of a firearm, both inside and outside his apartment, and from his car while driving, which endangered numerous innocent individuals. The Court recognizes defendant's efforts to rehabilitate and better himself in prison. However, the Court finds that this does not outweigh the other sentencing factors as discussed. Thus, the Court finds the § 3553(a) factors weigh against compassionate release.

As noted above, defendant was sentenced to a term of imprisonment of 360 months, and he is due to be released August 4, 2046, approximately 20 years from now. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this instance, defendant has served only a fraction of his 360-month

sentence, and he still has a significant amount of time left to serve. The Court finds that the length of time left on defendant's sentence is another factor that weighs against compassionate release.

Ultimately, in reaching its decision, the Court has considered the parties' filings, the PSR, the § 3553(a) factors and other relevant law, and the record as a whole. On the record before the Court, the § 3553(a) factors weigh against early release, and defendant's motion for compassionate release, pursuant to § 3582(c)(1)(A) [Doc. 139] is hereby **DENIED**.

## III. Amendment 821

### A. Standard of Review

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (internal citation and quotation marks omitted). One exception is identified in 18 U.S.C. § 3582(c)(2):

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The United States Supreme Court has interpreted § 3582(c)(2) as setting forth two requirements for a sentence reduction. First, "the defendant [must] ha[ve] been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" *United States v. Riley*, 726 F.3d 756, 758 (6th Cir. 2013) (internal quotation marks and citation omitted). Second, "such reduction [must be]

consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (internal quotation marks omitted). If the reviewing court determines that the defendant is eligible for a sentence reduction, then "[t]he court may then 'consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a).'" *United States v. Thompson*, 714 F.3d 946, 949 (6th Cir. 2013) (quoting *Dillon v. United States*, 560 U.S. 817, 826 (2010)).

In determining whether a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission, the Court must first determine "the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 560 U.S. at 827 (internal quotation marks and citation omitted); *see also* U.S. SENT'G GUIDELINES MANUAL § 1B1.10(b)(1) (U.S. SENT'G COMM'N 2023). Other than substituting Amendment 821 for the corresponding provision applicable when the defendant was originally sentenced, the Court "shall leave all other guideline application decisions unaffected." *Id.* And the Court "shall not" reduce a defendant's term of imprisonment to a term "less than the minimum of the amended guideline range," nor to a term "less than the term of imprisonment the defendant has already served." *Id.*; U.S. SENT'G GUIDELINES MANUAL § 1B1.10(b)(2)(A), (C).[1] In

[1] Section 1B1.10 provides one exception to the rule that a defendant may not receive a sentence below the amended guideline range—namely, if the defendant originally received a below-guideline sentence "pursuant to a government motion to reflect the defendant's substantial assistance to authorities." U.S. SENT'G GUIDELINES § 1B1.10(b)(2)(B).

addition to these limits, section 1B1.10 states that a court must also consider the § 3553 factors and the danger to the public created by any reduction in a defendant's sentence. U.S. SENT'G GUIDELINES MANUAL § 1B1.10 cmt. n.1(B)(ii). A court may further consider a defendant's post-sentencing conduct. *Id.* at n.1(B)(iii).

**B. Analysis**

Amendment 821 to the Guidelines, which became effective on November 1, 2023, has two relevant parts. U.S. SENT'G GUIDELINES MANUAL Supp. to App. C, amend. 821. First, Amendment 821 revises section 4A1.1's provision for the addition of "status points" to a defendant's criminal history points if the defendant committed the offense of conviction while under a criminal justice sentence. *Id.* Section 4A1.1(d) previously provided for two criminal history points to be added if the defendant committed the offense of conviction while under any criminal justice sentence. *Id.* Under Amendment 821, section 4A1.1(e) now provides for the addition of one criminal history point "if the defendant: (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *Id.* A defendant with less than seven criminal history points receives no additional "status points" under § 4A1.1. *Id.*

Secondly, Amendment 821 adds new section 4C1.1, which provides certain "zero-point offenders" with a two-level reduction to their offense level. *Id.* The two-level reduction applies if a defendant meets all of the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;
(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
(3) the defendant did not use violence or credible threats of violence in connection with the offense;
(4) the offense did not result in death or serious bodily injury;
(5) the instant offense of conviction is not a sex offense;
(6) the defendant did not personally cause substantial financial hardship;
(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848[.]

*Id.* Pursuant to Amendment 825, the Sentencing Commission amended section 1B1.10(d) to include these portions of Amendment 821 in the list of retroactive amendments. U.S. SENT'G GUIDELINES MANUAL Supp. to App. C, amend. 825. The Sentencing Commission also amended section 1B1.10(e) to specify that "[t]he court shall not order a reduced term of imprisonment based on . . . Amendment 821 unless the effective date of the court's order is February 1, 2024, or later." *Id.*

Here, defendant appears to seek a sentence reduction under § 4A1.1 of Amendment 821, which reduced the "status points" added to defendant's criminal history [Doc. 139]. Because defendant's prior convictions yielded seven criminal history point, under § 4A1.1, defendant only qualifies for one additional criminal history point, resulting in a total criminal history score of eight. However, even in light of this reduction, defendant's

criminal history category remains at VI because he is a Career Offender [PSR ¶ 41]. *See* USSG § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI"). Therefore, the applicable guideline range in this case remains unchanged because it is still based on a criminal history category of VI. *Id*. As a result, defendant was not sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission, and the Court lacks authority to reduce her sentence under § 3582(c)(2) and Amendment 821. U.S. SENT'G GUIDELINES MANUAL § 1B1.10(a)(2)(B).

To the extent that defendant relies on Amendments 826 and 829 to the Guidelines, the Court notes that those amendments have not been made retroactive by the Sentencing Commission, and therefore, cannot serve as the basis for a sentence reduction under § 3582(c)(2). *See United States v. Horn*, 679 F.3d 397, 401 (6th Cir. 2012) ("A court's power under § 3582(c)(2) . . . depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." (quoting *Dillon v. United States*, 560 U.S. 817, 826 (2010))). Accordingly, defendant has not established that he was sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. The Court therefore lacks authority to reduce his sentence under § 3582(c)(2). U.S. SENT'G GUIDELINES MANUAL § 1B1.10(a)(2)(B).

Defendant's motion [Doc. 336] is thus **DENIED** insofar as he seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).

## IV. Conclusion

For the reasons stated above, defendant's motion for a sentence reduction [Doc. 139] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE